Filed 6/30/26  P. v. McPherson CA3

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>PATRICK MCPHERSON,<br><br>        Defendant and Appellant. | C102081<br><br>(Super. Ct. No. 11F05321) |

Defendant Patrick McPherson appeals from the trial court's denial of his petition to vacate his murder conviction pursuant to what is now Penal Code section 1172.6.[1] The trial court held an evidentiary hearing and denied the petition, finding beyond a reasonable doubt that McPherson remained guilty of murder under two still-valid theories of liability.  McPherson appeals, arguing the court's findings were not supported by substantial evidence.

We conclude substantial evidence supports the trial court's finding that McPherson is still guilty of felony murder because he was a major participant in the underlying felony who acted with reckless indifference to human life.  Accordingly, we need not address whether substantial evidence supports the court's finding that he aided

---

[1] Undesignated statutory references are to the Penal Code.

1

and abetted implied malice murder.  We affirm the court's denial of McPherson's petition.

BACKGROUND

In 2012, the People charged McPherson with murder (§ 187, subd. (a)), attempted robbery (§§ 664, 211), and first degree residential burglary (§ 459).  As to each offense, the People alleged that McPherson was personally armed with a firearm.  (§ 12022, subd. (a)(1).)  As to the murder, the People alleged the special circumstances that McPherson committed the murder while engaged in the commission of a robbery and a burglary.  (§ 190.2, subd. (a)(17).)

A jury found McPherson guilty of the charged offenses and found true the alleged special circumstances but found not true the firearm allegations.  The trial court sentenced him to life without the possibility of parole for the murder; a concurrent term of four years six months (the upper term) for the attempted robbery, stayed pursuant to section 654; and a concurrent term of six years (the upper term) for the burglary, stayed pursuant to section 654.  We affirmed the judgment on direct appeal.  (*People v. Godines et al.* (July 25, 2018, C078214, C078601) [nonpub. opn.].)

In 2019, McPherson petitioned the trial court for resentencing pursuant to what is now section 1172.6.  The trial court denied the petition at the prima facie stage, and we initially affirmed the denial on appeal.  (*People v. McPherson* (Jan. 4, 2022, C093340) [nonpub. opn.].)  The California Supreme Court granted review and transferred the matter back to us to vacate our decision and reconsider in light of *People v. Strong* (2022) 13 Cal.5th 698.  (*People v. McPherson* (Jan. 24, 2023, C093340) [nonpub. opn.].)  Upon transfer, we concluded McPherson demonstrated prima facie entitlement to relief and directed the trial court to issue an order to show cause and conduct an evidentiary hearing.  (*Ibid.*)

On remand, the People relied solely on the evidence adduced at trial to argue McPherson was still guilty of felony murder as a major participant who acted with

2

reckless indifference to human life and implied malice murder as an aider and abettor. The following evidence was introduced at McPherson's trial.

On July 28, 2011, McPherson contacted Jeanette Campbell to ask whether she "wanted to make some money." At the time, Campbell was living with Aubry Toews; both Campbell and Toews worked as exotic dancers. McPherson told Campbell he knew someone who wanted to go to a strip club and spend some money and asked if she wanted to go dance for this person. Campbell decided to go to McPherson's house and Toews accompanied her. When they arrived, McPherson and another person named Mike Deed told Campbell and Toews that the victim had approximately $50,000 to $70,000 in a little black bag. McPherson told Campbell that when she and Toews went to the victim's apartment, they were to try and find the black bag and take the money or distract the victim.

McPherson, Deed, Campbell, and Toews drove to the victim's apartment and went inside. A friend of the victim named Vincent Van Hooser also came to the apartment. McPherson sold the victim a shotgun or rifle for $800.

The victim wanted Campbell and Toews to stay and for McPherson and Deed to leave. McPherson, Deed, Campbell, and Toews left the apartment and discussed what to do in the parking lot. Campbell convinced Toews to stay and they went back to the apartment to join the victim and Van Hooser. While Van Hooser prepared dinner, Campbell and the victim went to a liquor store to buy vodka and energy drinks. McPherson texted Toews telling her if she saw the black bag, and she thought she could get it, to text him so he could be over there.

After Campbell and the victim returned to the apartment, the victim had a drink and started smoking methamphetamine. The victim started becoming paranoid. Campbell and Toews were going back and forth to smoke cigarettes outside but the victim eventually put a wooden bar or stick in the door and told them that they could not go back outside. Toews nonetheless still moved the stick so she could go outside.

Campbell texted McPherson that they did not know where the money was, that they were scared because the victim was acting paranoid, and that she wanted to leave. At some point, Campbell went outside and used her phone to speak to McPherson. They discussed another way to rob the victim by having people come in with guns.

Toews texted McPherson that the victim was in the shower. McPherson said he was 10 minutes away and to make sure the door was open. Toews then texted that it would be the perfect time to rob the victim because he would not be able to get his gun. McPherson texted Toews saying Campbell should take the victim's .22-caliber gun. When Toews learned that the people coming in would also point the guns at her and Campbell, and that they needed to act like victims, Toews decided she did not want to do it. The plan was then further revised so that Toews would have the apartment door open and then leave while the people with guns entered the apartment. Campbell texted Toews that she should be smoking outside so the door would be open, and people could come into the house and "lay it down." Toews testified that "lay it down" meant "[p]ut people down with guns."

Campbell went into the bedroom with the victim and began dancing for him. McPherson texted Toews that they were there and to come out and get in the car. Toews left and saw two people wearing masks, later identified as Patrick Godines and Travis Mabson, walking from the car toward her. Toews got in the car; McPherson was sitting in the driver's seat. Godines and Mabson then ran back to the car, got inside, and said they went into the wrong apartment. Mabson, sitting in the front passenger seat, said his gun had jammed. Toews heard a clicking sound consistent with the sound of a slide being racked on a gun. An old man approached them in the parking lot and asked what they were doing there. The man was curious as to who had gone into his apartment.

McPherson drove the car around the corner. Toews testified that, at this point, "nobody wanted to go into the apartment and grab [Campbell]. Everyone wanted to leave." Toews convinced the others to get Campbell rather than leave. Toews, Godines,

4

and Mabson got out of the car. When they got to the apartment door, Toews covered the peephole so that Van Hooser would not see her at the door. Godines and Mabson were hiding off to the side, wearing masks. She then rang the doorbell and Van Hooser answered. Godines pointed the gun at Van Hooser; Van Hooser said the money was in the back room. Godines and Mabson entered the apartment. Toews returned to the car.

Godines went into the bedroom and said, "where's the money" with a gun pointed at the victim. The victim said if Godines was going to pull a gun on him, he better shoot him. The victim then made a move toward the door, charging or lunging at Godines, and Godines shot the victim, killing him.

Toews then saw Godines, Mabson, and Campbell coming toward the car. Everybody got in the car, Godines said he had shot the victim, and McPherson drove the group to an apartment. Deed then came to pick up McPherson, Toews, and Campbell and drove them to McPherson's apartment. Toews, Campbell, and McPherson had a conversation about what happened at the victim's apartment. The next day, McPherson called Campbell and said that "he was relaying from another person, you better not snitch." Campbell testified she was at the victim's apartment for about three or four hours the night of the robbery.

The trial court reviewed the evidence from McPherson's trial and ultimately denied the section 1172.6 petition. The court concluded that the People had proven beyond a reasonable doubt that McPherson was guilty of felony murder as a major participant with reckless indifference to human life and implied malice murder as an aider and abettor.

As to the finding that McPherson acted with reckless indifference to human life, the court applied the factors set forth in *People v. Clark* (2016) 63 Cal.4th 522, 618-623 (*Clark*) and explained:

"The petitioner was concerned that [the victim] would use lethal force to resist the theft. The petitioner also knew at least one of the codefendant robbers was armed when

Mabson's gun jammed after going to the wrong apartment before the murder. The defense argues that the petitioner tried to mitigate the violence by using the women as a distraction, however, the court finds this evidence proves the opposite. Instead, it shows the petitioner's reckless disregard for the increased number of people exposed to the elevated danger of petitioner's plan. Petitioner persisted in his plan, revised it when the original plan was not feasible, and revised it again when Toews did not want to be present during an armed robbery. Petitioner knew [the victim] was armed with the long gun petitioner sold him, and a .22 caliber firearm. Although petitioner knew [the victim] was acting paranoid and erratically while high on methamphetamines, petitioner was undeterred, directing the home invasion robbery from the safety of the getaway car while conditions became inherently more dangerous for the others involved.

"Godines shot [the victim] just after midnight, over six hours after the petitioner first texted Campbell with his robbery plan, and over four hours after they initially went to [the victim's] apartment. After learning that Godines shot [the victim], the petitioner did nothing to help [the victim]. He did not call for medical aid for fear of being caught, nor did he go to the police. Following the murder, the petitioner relayed a message from another person to Campbell that she should not tell the police what happened. The petitioner also asked Toews not to say anything about the murder."

Regarding the evidence that McPherson abandoned the robbery, the trial court explained that "[i]f that were true, and there was no intent to execute the robbery, Mabson and Godines would not have needed masks and guns [to retrieve Campbell]. They simply could have gone to the door and asked for Campbell to come out, or Toews could have gone back to retrieve Campbell."

McPherson timely appealed in September 2024. His opening brief was filed in July 2025, and this case was fully briefed on February 27, 2026.

DISCUSSION

McPherson challenges the trial court's finding that he is still guilty of felony murder. He does not contest that he was a major participant in the underlying felonies. But he maintains there is insufficient evidence he acted with reckless indifference to human life. We disagree.

Under section 1172.6, a defendant is ineligible for resentencing if the prosecution proves beyond a reasonable doubt that the defendant "is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) The current version of section 189 assigns liability for murder if the person accused "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).)

A trial court's denial of a section 1172.6 petition is reviewed for substantial evidence. (*People v. Njoku* (2023) 95 Cal.App.5th 27, 41-43.) In applying this standard, we " ' " 'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the necessary fact] beyond a reasonable doubt.' " [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' " (*People v. Oliver* (2023) 90 Cal.App.5th 466, 480.) Reversal is not warranted unless " ' "upon no hypothesis whatever is there sufficient substantial evidence to support the [trial court's ruling]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

7

Our Supreme Court has set out the elements required to establish a defendant was a major participant in a felony and acted with reckless indifference to human life. (See *People v. Banks* (2015) 61 Cal.4th 788, 803; *People v. Clark*, *supra*, 63 Cal.4th at pp. 614-623.) For the mens rea requirement of reckless indifference to human life, our Supreme Court has explained that a defendant must be " ' "*subjectively* aware that his or her participation in the felony involved a grave risk of death." ' " (*Banks*, at p. 807.) The question is "whether a defendant has ' "knowingly engag[ed] in criminal activities known to carry a grave risk of death." ' [Citations.] The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*Id*. at p. 801.) This requires more than the foreseeable risk of death inherent in any armed crime. (*Id*. at p. 808; see also *Clark*, at pp. 617-618 [participation in an armed robbery, alone, does not demonstrate reckless indifference to human life].) Instead, the defendant must consciously disregard a substantial and unjustifiable risk to human life. (*Clark*, at p. 617.) In addition to a subjective component, the reckless indifference element also encompasses an objective component; a reviewing court asks whether the defendant's behavior was a " 'gross deviation' " from what a law-abiding person would have done under the circumstances. (*Ibid*.)

Recognizing the overlap between the major participant and reckless indifference elements (*Clark*, *supra*, 63 Cal.4th at pp. 614-615), our high court has considered the following list of nonexhaustive factors in determining whether a defendant acted with reckless indifference to human life: (1) a defendant's knowledge of weapons, and use and number of weapons; (2) a defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the felony; (4) a defendant's knowledge of the cohort's likelihood of killing; and (5) a defendant's efforts to minimize the risks of the violence during the felony (*id*. at pp. 618-623). Further, " 'the greater the defendant's participation in the felony murder, the more likely

that he acted with reckless indifference to human life.' " (*Id*. at p. 615.)  No one factor is required or dispositive.  (*Id*. at p. 618.)  We analyze the totality of the circumstances to determine whether McPherson acted with reckless indifference to human life.  (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

Applying these factors here, substantial evidence supports the trial court's finding that McPherson acted with reckless indifference to human life.

As to weapons, McPherson knew that Mabson was armed because Mabson said his gun had jammed while sitting next to McPherson after Mabson entered the wrong apartment.  The statement that the gun jammed also supports the inference that Mabson made some attempt to fire or otherwise use the gun when he entered the wrong apartment.  Additionally, McPherson not only knew that the victim had two firearms, but he actually supplied the victim with one of those firearms shortly before the murder.

McPherson suggests this last point is not a proper consideration because the factors set forth in *Banks* and *Clark* concern only whether McPherson supplied the weapons to the perpetrators—not to the victim.  Even assuming McPherson's characterization of those factors is correct, a court considering this issue is not limited to those factors.  (See *People v. Strong*, *supra*, 13 Cal.5th at p. 706 [explaining that *Clark* "set out a *nonexhaustive* list of considerations relevant to th[e] determination" of reckless indifference to human life (italics added)].)  That McPherson supplied the victim with a firearm and knew the victim had an additional firearm is plainly relevant to whether he was " ' "aware that his or her participation in the felony involved a grave risk of death" ' " (*People v. Banks*, *supra*, 61 Cal.4th at p. 807) and "consciously disregard[ed] 'the significant risk of death his . . . actions create[d]' " (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677).  It increases the likelihood that the robbery would be met with resistance and that the perpetrators would be required to use lethal force in response.  (Cf. *Banks*, at p. 811 [rejecting argument that the defendant acted with reckless indifference, in part because "nothing in the record reflects that [the defendant] knew there would be a

9

likelihood of resistance and the need to meet that resistance with lethal force" as there was no evidence the defendant knew there would be guards or that the guards would be armed].)

Next, McPherson was not present at the shooting and therefore could not have intervened to stop Godines from shooting the victim. But McPherson was at the scene of the crime and directed the actions of others from the parking lot or nearby. On this point, McPherson emphasizes there is evidence he wanted to leave and that the plan was no longer to rob the victim but to retrieve Campbell. The trial court rejected this evidence, as it was contradicted by the fact that Godines and Mabson returned to the victim's apartment wearing masks and with a firearm, and immediately proceeded to storm the apartment and rob the victim. These actions, in the trial court's view, belied the assertion that the plan to rob the victim had been abandoned. The trial court was permitted to draw this alternate reasonable inference from the evidence, and thus reasonably concluded that McPherson had not abandoned the plan to rob the victim. (See *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591 [explaining that "contrary and conflicting inferences" must be rejected when reviewing finding of reckless indifference to human life for substantial evidence]; cf. *People v. Myles* (2023) 89 Cal.App.5th 711, 740 ["for purposes of substantial evidence review, we are not permitted to draw inferences contrary to the verdict"].) We further note that McPherson did not take any steps to aid the victim after learning Godines shot him.

As to the duration of the offense, McPherson points out that this is not a case where the victim was restrained for a prolonged period of time, making it more likely that the felony would result in a murder. At the same time, three or four hours elapsed from the time McPherson and his accomplices first went to the victim's apartment. Over this time, McPherson revised the plan in a manner that increased the risk of violence and lethal force. The original plan was for Campbell and Toews to either find the money and get it or act as a distraction while someone else took the money. When that did not work,

10

McPherson revised that plan to have people come in with guns to rob the victim. McPherson adhered to this plan even though Campbell told him the victim was acting paranoid, and that she and Toews were scared and that she wanted to leave.

Regarding McPherson's knowledge that Godines had a propensity for violence, the People concede there is no evidence in the record that McPherson knew as such. This factor thus weighs in McPherson's favor.

Finally, McPherson did not take any meaningful steps to minimize the risk of violence. In fact, as discussed, he made the plan more dangerous as time went on. Despite knowing that the victim was armed and paranoid, McPherson decided to send in people with guns to rob him. As Campbell and Toews understood McPherson's plan, it was to "lay it down" meaning to "[p]ut people down with guns." This is plainly not a plan that minimized the risk of violence.

Considering the totality of the circumstances, we conclude substantial evidence supports the finding that McPherson acted with reckless indifference to human life and thus reject his challenge to the trial court's conclusion that he was still guilty of felony murder. Because we affirm on that basis, we need not consider whether substantial evidence supports the trial court's finding that McPherson is guilty beyond a reasonable doubt of implied malice murder as an aider and abettor.

## DISPOSITION

The order denying McPherson's section 1172.6 petition is affirmed.

/s/
BOULWARE EURIE, J.

We concur:

/s/
HULL, Acting P. J.

/s/
RENNER, J.

11